586 P.2d 36 (1978)
O'Brian LaRay POSEY, a minor, By and Through his parents and next friends, Robert V. Posey and Mary L. Posey, and Robert V. Posey and Mary L. Posey, on their own behalves, Petitioners,
v.
The DISTRICT COURT IN AND FOR the SECOND JUDICIAL DISTRICT of the State of Colorado, and the Honorable George M. McNamara, One of the Judges thereof, Respondents.
No. 28301.
Supreme Court of Colorado, En Banc.
October 23, 1978.
Eugene L. Deikman, William D. Peterson, Denver, for petitioners.
Walberg & Pryor, Thomas L. Roberts, Denver, for defendant Doctor L. M. Robertson, Jr.
Montgomery, Little, Young, Campbell & McGrew, V. James Robinson, Jr., Denver, for defendant Presbyterian Medical Center.
ERICKSON, Justice.
Pursuant to C.A.R. 21, the petitioners who were the plaintiffs, in a professional liability case, sought a writ in the nature of prohibition to prevent the respondent district court from precluding discovery. We issued a rule to show cause and now discharge that rule.
The plaintiffs have sued Dr. L. M. Robertson, alleging that he negligently performed neurosurgery on plaintiff O'Brian LaRay Posey, a minor, between the dates of July 22 and August 21, 1975. The plaintiffs also named the Presbyterian Medical Center as a defendant and assert that the hospital was negligent in appointing, supervising, and retaining Doctor Robertson on its staff during the period of time that the injuries were suffered.
In August 1975, the doctor's admitting privileges to the hospital were suspended, *37 pending an investigation of his treatment of the minor plaintiff. The medical advisory board of the Presbyterian Medical Center created an ad hoc committee, consisting of four staff physicians, to review Doctor Robertson's treatment of the minor plaintiff. The ad hoc committee met twice and then recommended that the doctor be summarily suspended pending further investigation. On November 1, 1975, the medical advisory board met and suspended Doctor Robertson from the hospital staff.
The plaintiffs sought to take the depositions of the members of an ad hoc committee appointed by the medical advisory board of the defendant Presbyterian Medical Center to review the care and treatment provided to the minor plaintiff O'Brian LaRay Posey by Doctor Robertson at the medical center. Subpoenas and notices to take depositions were served on the ad hoc committee to enable the plaintiffs to take the depositions of the doctors. The defendant hospital filed a motion for a protective order and a motion to quash the subpoenas. The district court quashed the subpoenas because of a privilege created by the legislature to facilitate the workings of the hospital review committees. We affirm that ruling. The sole issue before us is the validity of the order quashing the subpoena.
The statutes which the trial court relied upon provide:
Section 12-43.5-101, C.R.S.1973 (1976 Supp.):
"(1) It is the policy of this state to encourage discipline and control of the practice of health care rendered by physicians by committees made up of physicians licensed to practice in this state. It is the duty of such committees to openly, honestly, and objectively study and review the conduct of practice by members of the profession, including the quality of service and when appropriate, the length of hospital confinement.
"(2) It is the duty of the health care profession to do all things necessary to provide the public with services of proper quality at the lowest reasonable cost. To this end, review committees and members thereof should be granted certain immunities relating to their actions within the scope of the official conduct of their responsibilities and should additionally review, discipline and educate the profession by free, open and unfettered exercise of professional judgment."
Section 12-43.5-102(3)(e), C.R.S.1973 (1976 Supp.):
"(e) The records of a review committee shall not be subject to subpoena in any civil suit against the physician, but at the request of the state board of medical examiners, the board shall be provided a summary of the findings, recommendations, and disposition of action taken by a review committee." (Emphasis supplied.)
The plaintiffs rely on the language emphasized above to support the contention that the records of a hospital review committee are only privileged in a suit against a physician. The precision of the statutory reference to suits against a physician is said to evince a legislative intent to deny protection to records subpoenaed in a suit against a hospital for its allegedly negligent supervision and retention of the defendant doctor. We believe that such a narrow reading of the statutory privilege would eviscerate the legislative scheme envisioned by section 12-43.5-101, et seq. "In enacting a statute, it is presumed that: . . . the entire statute is intended to be effective." Section 2-4-201, C.R.S.1973.
"We will not construe a statute in such a way as to defeat the legislative intent . . . In statutory construction, legislative intent is the polestar." People v. Lee, 180 Colo. 376, 506 P.2d 136, 139 (1973). See also section 2-4-212, C.R.S. 1973. Although the wording of section 12-43.5-102 is infelicitous, we do not think that it strains canons of judicial construction to construe section 12-43.5-102 to mean that "the records of a review committee shall not be subject to subpoena in any civil suit," including a suit against a hospital.
Title 12, Article 43.5 provides for the establishment of hospital review committees with broad latitude to "investigate or cause to be investigated the quality of care *38 being given by any physician licensed" under Title 12, Article 36. "An investigation may relate to a physician's professional qualifications, clinical competence, mental or emotional stability, physical condition, or any other matter affecting the quality of care provided." Section 12-43.5-102(3)(a), C.R.S.1973 (1976 Supp.).
It is apparent that such investigations will be merely perfunctory if the wide-open inquiry envisioned by the statutory scheme is made the subject of discovery.
"Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit." Bredice v. Doctor's Hospital, Inc., 50 F.R.D. 249, 250 (D.D.C.1970), aff'd on rehearing, 51 F.R.D. 187 (D.D.C.1970), aff'd., 156 U.S. App.D.C. 199, 479 F.2d 920 (1973).
Moreover, the legislative declaration set out above clearly expresses the legislature's desire that hospital review committees be allowed to act unfettered by fear of subsequent liability. St. Lukes Hospital v. Industrial Comm., 142 Colo. 28, 349 P.2d 995, 997 (1960).
We note that other jurisdictions, faced with similar questions, have reached a similar conclusion. Tucson Medical Center, Inc. v. Misevch, 113 Ariz. 34, 545 P.2d 958 (1976); Matchett v. Superior Court, 40 Cal.App.3d 623, 115 Cal.Rptr. 317 (1974); Oviatt v. Archbishop Bergan Mercy Hospital, 191 Neb. 224, 214 N.W.2d 490 (1974); see also Cal.Evidence Code § 1157 (1968).
We are faced with an intent imperfectly expressed by the legislature. In order to give effect to that intent and to prevent the statutory scheme for hospital review committees from being emasculated, we construe section 12-43.5-102(3)(e) to preclude discovery of the records of those committees in any civil action. People v. Silvola, Colo., 547 P.2d 1283 (1976). To permit the subpoenas to be utilized to reach the records of the committee would permit the plaintiffs to do indirectly what they cannot do directly. The legislative intent was that the records of the review committee would be privileged, so that the committee could freely, openly, and with unfettered discretion exercise its collective professional judgment.
Accordingly, the rule to show cause is discharged.
KELLEY, J., dissents. Dissenting opinion to follow.
CARRIGAN, J., did not participate.
KELLEY, Justice, dissenting.
I respectfully dissent.
My interpretation of Section 12-43.5-102, C.R.S.1973 (1976 Supp.), leads me to an opposite conclusion from my colleagues.
The scope of discovery must be measured by C.R.C.P. 26(b)(1), which provides:
"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
Discovery was created to end the fox-and-hounds, or trial by ambush, method for the trial of civil actions. To make the search for truth meaningful, liberal discovery was afforded both parties so that the issues could be clearly defined in the light of the available evidence. Cameron v. District Court, Colo., 565 P.2d 925 (1977). The relevance of the information sought by the petitioners is obvious.
Doctor Robertson was suspended by the ad hoc committee for his treatment of the minor plaintiff in this case. Why he was suspended, as well as the acts and omissions which led the committee to conclude that he *39 should be suspended, would be relevant to determine the hospital's responsibility for the surgery and treatment rendered by the doctor in the defendant hospital.
The privilege against disclosure of "the records" of a review committee is limited to civil actions against the physician  not the hospital. Section 12-43.5-102, C.R.S.1973 (1976 Supp.). Even in suits against physicians, the only restriction on the subpoena power relates to the records of the review committee. The statute does not proscribe subpoenaing a physician who is a member of a review committee to testify.
We have long since held where a statute creates a privilege which keeps relevant information from the truth-finding process, it must be strictly construed. Horn v. Hurwitz, 76 Colo. 389, 231 P. 1116 (1925); Keeler v. Russian, 68 Colo. 196, 189 P. 255 (1920).
In the interest of the full disclosure of the facts, I would reverse the trial court and order it to honor the subpoenas to the end that relevant evidence within the knowledge of the members of the review commission may be obtained.