Frank O. FRANCO, M.D., Petitioner,

v.

The DISTRICT COURT In and For the CITY AND COUNTY OF DENVER, and The Honorable John Brooks, Jr., one of the Judges thereof, Respondents.

No. 81SA97.

Supreme Court of Colorado,
En Banc.

Jan. 25, 1982.

Roath & Brega, P. C., Robert E. Kendig, Denver, for petitioner.

Pryor, Carney & Johnson, Thomas L. Roberts, Englewood, Hansen & Breit, P.C., William H. ReMine III, Quiat, Dice & Associates, Andrew L. Quiat, Denver, for respondents.

Lawrence M. Wood, Denver, for amicus curiae Colorado Medical Society.

QUINN, Justice.

Pursuant to C.A.R. 21 petitioner Frank O. Franco, M.D. invokes our original jurisdiction to compel the respondent court to order the production of certain documents in connection with a civil action filed by the petitioner against Beth Israel Hospital (Beth Israel), its Surgical and Medical Executive Committees, and the individual members of the committees. The pending civil action arises out of the suspension of the petitioner's surgical privileges at the hospital upon the recommendation of both committees which, pursuant to the statutory scheme of section 12–43.5–101 *et seq.*, C.R.S.1973 (1978 Repl.Vol. 5), function as professional peer review committees to evaluate the quality of health care rendered by physicians practicing at Beth Israel. The respondent court denied the petitioner's motion to compel discovery and we issued a rule to show cause. We now discharge the rule.

I.

The petitioner has held hospital staff privileges at Beth Israel since 1969. In October 1979 problems relating to the petitioner's performance of colon surgery on a patient at the hospital came to the attention of Beth Israel's Surgical Committee. As a result of a committee meeting on October 16, 1979, Dr. Polevoy, the chairman of the Surgical Committee, wrote to the petitioner asking him to explain his management of the particular case. The petitioner responded to the committee by letter.

The committee met on November 20, discussed the petitioner's response to its inquiry, decided to recommend the suspension of his privilege to perform colon surgery, and appointed an ad hoc committee consisting of four physicians to conduct an audit of hospital charts of his surgery on patients during the previous two years. Dr. Polevoy notified the petitioner of the Surgical Committee's actions and his procedural rights under Beth Israel's bylaws. Pursuant to Beth Israel's bylaws, the Surgical Committee's recommendation of suspension was referred to the Medical Executive Committee for review. On December 20, 1979, the petitioner was invited to attend the meeting of the Medical Executive Committee. He presented his reasons for performing the surgery at issue and submitted letters from independent surgeons regarding the surgery. The Medical Executive Committee concurred in the Surgical Committee's recommendation of suspension and the petitioner was so advised.

On January 15, 1980, the Surgical Committee again met after the hospital chart audit was completed. The petitioner met with the ad hoc committee and the committee reported its findings to the Surgical Committee. The Surgical Committee recommended that, in addition to suspending the petitioner's privilege to perform colon surgery, his privileges for vascular and thoracic surgery be suspended. The petitioner was notified of the committee's recommendation which also was referred to the Medical Executive Committee.

A meeting of the Medical Executive Committee was scheduled for February 25, 1980. Prior to the meeting the petitioner had obtained a copy of the minutes of the earlier meetings of the Surgical and Medical Executive Committees [1] and, in the course of talking to some committee members, had been informed of reports submitted by other doctors to the committee during the investigation into the petitioner's surgical practices. All of the petitioner's discussions with committee members took place on an informal and personal basis and, as the petitioner conceded, the committee members did not represent themselves as acting in an official capacity for their respective committees, nor did they purport to waive any privilege on behalf of their respective committees.

The petitioner attended the meeting of the Medical Executive Committee on February 25, 1980, and presented his version of the matter at issue. The committee voted to suspend the petitioner's surgical privileges in accordance with the recommendation of the Surgical Committee. Although the bylaws of Beth Israel granted the petitioner the right to request a formal hearing before the Medical Executive Committee after it voted to suspend his privileges, *By-Laws of the Medical Staff of the Beth Israel Hospital and Geriatric Center (By-Laws)*, Art. VIII, sec. 8.2(b), the petitioner chose not to avail himself of this right and his suspension became final.[2]

The petitioner then filed a civil suit against Beth Israel, the Surgical and Medical Executive Committees, and the committee members for intentional infliction of emotional distress, outrageous misconduct, and conspiracy to injure his personal and professional reputation. He sought an injunction prohibiting the suspension of his surgical privileges, an order expunging the

---

1. The minutes of the Surgical and Medical Executive Committees contained a summary of all the business considered at the committee meeting, only some of which pertained to the petitioner. According to testimony elicited at the motions hearing, the minutes of these committees were circulated quite freely among hospital staff shortly after the meeting and were readily available to the petitioner. The statutory scheme, however, contemplates that minutes pertaining to an investigation of a physician's qualifications should be kept confidential. *See*

sections 12–43.5–102(3)(e) and 3(f), C.R.S.1973 (1978 Repl.Vol. 5).

2. Beth Israel's bylaws also provided the petitioner with the right to appeal the decision of the Medical Executive Committee to the Governing Board. *By-Laws*, Art. VIII, sec. 8.2(c). The bylaws state that if appellate review is not requested within thirty days, the physician shall be deemed to have waived his right to review and to have accepted the adverse recommendation or decision which shall become effective immediately. Art. IX, sec. 9.6(b).

suspension from his record and reinstating his privileges, and compensatory and punitive damages. To establish his claims, the petitioner requested all notes, reports, memoranda, audits, and written recommendations of the review committees, as well as all documents from within and without the hospital relating to the review committee recommendations. Beth Israel objected to the requested discovery on the ground that the documents sought were privileged under sections 12–43.5–102(3)(e), C.R.S.1973 (1978 Repl.Vol. 5), which generally exempts from subpoena the records of professional review committees. The petitioner filed a motion to compel discovery and the respondent court conducted a hearing to determine whether the statutory privilege was applicable to a physician's lawsuit for damages and injunctive relief arising from a review committee's recommendation to suspend his hospital privileges and whether Beth Israel or committee members had waived the privilege. The court ruled that the statutory privilege barred discovery of the requested information and that the privilege had not been waived.

█ The petitioner concedes that section 12–43.5–102(3)(e) of the statutory scheme establishing peer review committees indeed does create a privilege. The dispute here centers on the scope of the privilege.[3] Before addressing this question we first must determine whether the review committees of Beth Israel qualify for the statutory privilege. Then we will address the principal issue, namely whether the privilege protects the records of the review committees from pretrial discovery in connection with the petitioner's pending lawsuit. Lastly, we consider whether Beth Israel and committee members waived the privilege by tendering to petitioner some committee records and by informally discussing committee proceedings with him.

## II.

Peer review statutes, which state legislatures have enacted with increasing frequency in recent years, are directed towards the attainment of an elevated quality of health care at a reasonably low cost to the patient. Such legislation is based on the premise that the evaluation of the professional competency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance. Peer review legislation promotes self-regulatory competence usually by protecting committee members with a qualified immunity and committee proceedings with some degree of confidentiality. See, e.g., Note, *The Legal Liability of Medical Peer Review Participants For Revocation of Hospital Staff Privileges*, 28 *Drake L.Rev.* 692 (1978–79); Note, *Medical Peer Review Protection In the Health Care Industry*, 52 *Temple L.Q.* 552 (1979).

Colorado enacted peer review legislation in 1975. 1975 Colo.Sess.Laws, ch. 126, 12–43.5–101 *et seq.* at 465–67. Section 12–43.5–102 sets forth the qualifying criteria for a review committee in terms of its source of authority, function and composition. Subsection 2(a) provides that the review committee may be authorized to act only by the medical staff of a licensed hospital and only "if the medical staff operates pursuant to written bylaws approved by the governing board of the hospital." The committee's function, as outlined in subsection (1), is "to review and evaluate the quality of care being given patients by any physician licensed under [the Colorado Medical Practice Act], in order to protect patients against the unauthorized, unqualified, and improper practice of such physician."[4] The composition of the review committee must include

3. No issue is raised here as to whether the information sought by the petitioner is part of "the records of a review committee" within the meaning of section 12–43.5–102(3)(e), C.R.S. 1973 (1978 Repl.Vol. 5). We note that a review committee is authorized to investigate a physician's qualifications and to conduct a hearing upon completion of the investigation. *See* note 4, *infra.* Committee records may include the

testimony and written reports of witnesses, documents and other material presented to the committee, and the committee's notes, memoranda, minutes and other records relating to its investigatory and hearing functions.

4. In keeping with the review committee's statutory function, the committee is authorized to conduct an investigation "upon its own motion,

at least three licensed physicians. Section 12–43.5–102(2), C.R.S.1973 (1978 Repl.Vol. 5).

█ The record in this proceeding discloses that the medical staff of Beth Israel does operate pursuant to written and approved bylaws. These bylaws organize the medical staff into four clinical departments—medical, surgical, family practice and anesthesia. *By-Laws, supra*, Art. XI, sec. 11.2. Each department is required to appoint a committee and evaluate the professional performance of practitioners holding clinical privileges in the department. *Id.* at Art. XI, sec. 11.7. The recommendations of the clinical committees are forwarded to the Medical Executive Committee which primarily functions as a liaison between the medical staff and the Governing Body of the hospital.[5] *Id.* at Art. XII, sec. 12.1(f). In its liaison capacity the Medical Executive Committee reports and recommends corrective action against a practitioner, including a suspension of privileges. *Id.* Upon request, committee action is subject to formal hearing procedures and to an appellate review by the Governing Body. *Id.* at Art. IX, sec. 9.6.

The bylaws require each clinical department to meet at least monthly to analyze on a peer group basis the clinical work of the department and to establish a committee to conduct the initial phase of patient care review. *Id.* at Art. XI, sec. 11.7(c). Although the composition of clinical committees is left to the departmental chairman's discretion, the Surgical Committee during the time frame involving the petitioner's suspension was composed of twelve physicians. The bylaws require the Medical Executive Committee to periodically review all available information regarding the performance and clinical competence of staff members and other practitioners with clinical privileges. *Id.* at Art. XII, sec. 12.1(f)(12). This committee consists of fourteen members, at least seven of whom are licensed physicians. *Id.* at Art. XII, sec. 12.1(d).

A review of Beth Israel's bylaws and the operating procedures of its Surgical and Medical Committees leads us to conclude that these committees satisfy the statutory criteria for review committees in terms of their source of authority, composition and function. Accordingly, both committees qualify for the statutory privilege created by section 12–43.5–102(3)(e), C.R.S.1973 (1978 Repl. Vol. 5).

### III.

█ We now address the question whether the peer review privilege protects the records of a review committee from pretrial discovery in connection with a physician's action for damages and injunctive relief against a hospital, its review committees and the committee members. Section 12–43.5–102(3)(e), which creates the privilege, provides:

"The records of a review committee shall not be subject to subpoena in any civil suit against the physician, but, at the request of the Colorado state board of medical examiners, the board shall be

---

pursuant to written allegations made by a patient of such physician, or upon recommendation of a professional working in the health care field. *An investigation may relate to the physician's professional qualifications, clinical competence, mental or emotional stability, or physical condition or any other matter affecting the quality of care provided.*" Section 12–43.5–102(3)(a), C.R.S.1973 (1978 Repl. Vol. 5). The statutory procedures for a hearing on the physician's qualifications or competence are found at subsections 12–43.5–102(3)(b) and (c), C.R.S.1973 (1978 Repl. Vol. 5). Under section 12 43.5–102(3)(b)(I), if the review committee's investigation indicates a substantial lack in the quality of care rendered by such physician, the review committee may hold a hearing to con-

sider the findings or, if the committee itself conducted the investigation, the committee must transmit its findings to an established adjudicatory board. Section 12–43.5–102(3)(b)(II) grants the physician the right to be notified of the hearing, to be present and represented by counsel, to offer evidence in his own behalf, and, under section 12–43.5–102(3)(c), to receive a copy of the committee's recommendations after the completion of the hearing and to appeal the decision.

5. The Governing Body consists of the Board of Directors of Beth Israel. *By-Laws, supra*, Art. II, sec. 2.1(c).

provided a summary of the findings, recommendations, and disposition of actions taken by a review committee. Said board may also request, and shall receive, a summary of the actions of the hospital board of trustees in regard to recommendations of a review committee. The records of a review committee or a hospital board may be subpoenaed in a suit brought by the physician seeking judicial review of any action of the review committee or a hospital board."

The petitioner raises the following alternative arguments regarding the scope of section 12–43.5–102(3)(e): (1) the privilege should be limited only to malpractice cases against a physician and should not be applicable to a civil suit, not involving judicial review, in which an aggrieved physician seeks damages and injunctive relief against a hospital, a review committee or the committee members; (2) even if the privilege is applicable to a physician's civil suit not involving judicial review but seeking redress of committee discipline, it should be limited to good faith actions by committee members. We reject the petitioner's argument as to the scope of the peer review privilege

and hold that section 12–43.5–102(3)(e) bars pretrial discovery of the committee records in this case. The clear expression of legislative purpose and intent in the creation of the peer review statutory scheme dictates this result.

### A.

■ The provisions of section 12–43.5–102(3)(e), by themselves, do not answer the question whether the privilege applies to a physician's civil action, not involving judicial review, for redress of disciplinary action taken against him pursuant to the peer review process. However, an examination of the entire statutory scheme reveals that the legislature intended to shield the committee records from subpoena or discovery in all civil litigation, except a judicial review proceeding.

Pertinent legislative history underlying the enactment of the peer review privilege reveals that one of the purposes of section 12–43.5–102(3)(e) is to establish judicial review as the primary means of redress for a physician against whom disciplinary action has been imposed in the peer review process.[6] In the past courts frequently have

---

6. The respondent has filed a transcription prepared from a tape recording on file with the Colorado State Archives and Public Records Office. *Tape Recording, Senate Floor Debate, House Bill 1012, 50th General Assembly 2d Session (1976).* The transcript of the debate upon the second reading of House Bill 1012, which amended the peer review statutory scheme by adding the statutory privilege contained in section 12–43.5–102(3)(e), contains the following exchange:

"SENATOR McCORMACK: Madame Chairman, I move the adoption of House Bill 1012 on second reading.... One of the concerns that the committee had was how to make certain that professional review committees have a great deal more authority in speaking to those cases that from time to time appear where physicians conduct either a poor practice or have a poor relationship with their patients that can result in misunderstandings producing malpractice suits or sometimes where they perhaps just keep bad records and get themselves into trouble. The function of a professional review committee is to be able to discipline a physician and the phrase that we kept hearing ... was 'to help clean their own house.' "

\*   \*   \*   \*   \*   \*

"SENATOR PLOCK: Senator McCormack, as I understand the bill the Board and its members would not be liable for any damages by a physician who had been disciplined, but the physician would still be entitled to seek judicial review and to try to get the finding of the Board overturned, and in that connection he would have the right to subpoena any of the records or proceedings of that Board. Is that correct?

"SENATOR McCORMACK: Yes, that's correct, and I think that the point that you make is a good one. If it were possible to turn this procedure into a witch hunt, I think that it would be a tragedy and there is no thought to that. I think that the full due process is available for the physician and indeed I think that because of this it lends justification to the closed portion of the earlier investigative hearing and I think that it does the chore that the committee started out for it to do.

"SENATOR PLOCK: So then the ultimate redress of the physician would not be to seek damages for improper action, but would be to seek reversal of a finding that he was no longer, for example, entitled to staff privileges on hospitals?

"SENATOR McCORMACK: Yes, it did seem consistent to us as we were trying to avoid

viewed a private hospital's denial or suspension of a physician's hospital privilege as an internal management decision of a private association and generally beyond the scope of judicial review. *See, e.g., Shulman v. Washington Hospital Center,* 222 F.Supp. 59 (D.D.C.1963); *Khoury v. Community Memorial Hospital, Inc.,* 203 Va. 236, 123 S.E.2d 533 (1962); *Sams v. Ohio Valley General Hospital Association,* 149 W.Va. 229, 140 S.E.2d 457 (1965); Annot., *Exclusion of or Discrimination Against Physician or Surgeon by Hospital,* 37 A.L.R.3d 645, 659–61 (1971); McCall, *A Hospital's Liability For Denying, Suspending and Granting Staff Privileges,* 32 *Baylor L.Rev.* 175, 182–87 (1980); Note, *Judicial Review of Private Hospital Activities,* 75 *Mich.L.Rev.* 445 (1976). Section 12–43.5–102(3)(e), which creates the peer review privilege, dispels the notion that a physician whose hospital privileges have been abridged as the result of the statutory peer review process is without legal redress.

In enacting section 12–43.5–102(3)(e) the legislature provided physicians of all hospitals, private and public, with a right to judicial review of any disciplinary action taken against them as a result of statutory peer review proceedings. Judicial review in the context of the peer review statutory scheme means a judicial proceeding in which the court reviews the hospital governing board's final action on the review committee's recommendation and determines whether the governing board exceeded its jurisdiction, abused its discretion, or otherwise acted in violation of the physician's constitutional or statutory rights, and the evidence before the court is limited solely to the record as made before the hospital governing board. *See, e.g., Colorado State Board of Medical Examiners v. District Court,* 138 Colo. 227, 331 P.2d 502 (1958); *Board of Adjustment v. Handley,* 105 Colo. 180, 95 P.2d 823 (1939); *Sapero v.*

*State Board of Medical Examiners,* 90 Colo. 568, 11 P.2d 555 (1932).[7] Admittedly, the physician's exercise of his statutory right to judicial review will result in the disclosure to him of testimony and other material presented during the peer review proceedings, as well as the review committee's comments and recommendations. However, we do not believe these limited disclosures, which are conducive to procedural fairness, derogate from the legislature's intent to shield such information from subpoena and discovery in litigation not involving judicial review of the disciplinary action.

That the legislature intended to limit discovery of committee records exclusively to judicial review proceedings is apparent from the General Assembly's declaration of purpose in creating the committee review process. Section 12–43.5–101 states:

"(1) It is the policy of this state to encourage discipline and control of the practice of health care rendered by physicians by committees made up of physicians licensed to practice in this state. It is the duty of such committees to openly, honestly, and objectively study and review the conduct of practice by members of the profession, including the quality of service and, when appropriate, the length of hospital confinement.

"(2) It is the duty of the health care profession to do all things necessary to provide the public with services of proper quality at the lowest reasonable cost. To this end, review committees and members thereof should be granted certain immunities relating to their actions within the scope of the official conduct of their responsibilities and should additionally review, discipline, and educate the profession by free, open, and unfettered exercise of professional judgment."

It would be unreasonable to impose upon committee members a statutory duty to "openly, honestly, and objectively study and

---

malpractice suits to keep the review committee itself immune from suit by the physician under question."

**7.** A physician on the staff of a private hospital may seek judicial review under C.R.C.P.

106(a)(4). In the case of a physician employed by the state, judicial review would be available under the provisions of the State Administrative Procedure Act. Section 24–4–106, C.R.S. 1973.

review" the conduct of practicing members of the medical profession if the records of their study and review were available for discovery in subsequent litigation seeking money damages against the hospital, its review committees and the individual members thereof for disciplinary action imposed in the peer review process. In addition, members of the medical profession cannot be expected to initiate or willingly participate in a peer review investigation if their testimony and reports may be subjected to discovery in subsequent civil litigation involving issues far beyond a meaningful judicial review of the committee's action.

The legislative intent to shield the committee's records from disclosure in civil litigation, except in connection with a judicial review proceeding, is further evidenced by section 12–43.5–103(3) which grants the hospital's governing board a qualified immunity from suit for damages in any civil action brought by a physician but expressly excepts a judicial review proceeding from the immunity grant.[8] The immunity exception for judicial review is necessary to afford the physician an effective remedy for correction of any improper discipline resulting from the peer review process. Considering the significant public interest in effective health care at the lowest reasonable cost, the statutory peer review process, in our opinion, represents a legislative choice of medical staff candor at the expense of pretrial discovery in any lawsuit not involving a judicial review of the committee's recommendations and resulting disciplinary action by the hospital's governing board. Restricting the privilege only to malpractice actions against a physician, as advocated by the petitioner, would thwart the legislative declaration of purpose in section 12–43.5–101. Moreover, such a narrow construction of the privilege would nullify the bylaw review procedure adopted by a hospital in conformity with section 12–43.5–102(2)(a) and, to that extent, would contravene the statutory objective of establishing judicial review as the primary means of redress for disciplinary action imposed in the peer review process.[9]

Our construction comports with the broad interpretation of the statutory privilege adopted by this court in *Posey v. District Court*, 196 Colo. 396, 586 P.2d 36 (1978). There, in a malpractice action against a physician and a hospital, we upheld the quashing of deposition subpoenas served on members of an ad hoc committee appointed by the hospital's medical advisory board. We noted that the peer review statute contemplates wide-open inquiry by a review committee and a narrow construction of the privilege would frustrate this salutary goal:

"The precision of the statutory reference to suits against a physician is said to evince a legislative intent to deny protection to records subpoenaed in a suit against a hospital for its allegedly negligent supervision and retention of the defendant doctor. We believe that such a narrow reading of the statutory privilege would eviscerate the legislative scheme envisioned by section 12–43.5–101, *et seq*. 'In enacting a statute, it is presumed that: . . . the entire statute is intended to be effective.' Section 2–4–201, C.R.S. 1973.

" 'We will not construe a statute in such a way as to defeat the legislative intent. . . . In statutory construction, legislative intent is the polestar.' *People v. Lee*, 180 Colo. 376, 506 P.2d 136, 139 (1973). *See also* section 2–4–212, C.R.S.

---

**8.** Section 12–43.5–103(3), C.R.S.1973 (1978 Repl. Vol. 5), provides:

"The board of trustees of a hospital and the individual members of a board of trustees shall be immune from suit for damages in a civil action brought by a physician who is the subject of action taken in good faith by such board if the action is based upon recommendations of the review committee; but nothing in this subsection (3) shall preclude judicial review of the action of a board of trustees."

**9.** Our reference to judicial review as the primary means of legal redress for disciplinary action resulting from the peer review process is not intended to imply that a physician may not forego that remedy and, as here, bring an action in tort against the hospital, its review committees and the committee members. Rather, our remarks are intended to point up the legislature's intent to prohibit discovery of committee records in such an action.

1973. Although the wording of section 12–43.5–102 is infelicitous, we do not think that it strains canons of judicial construction to construe section 12–43.5–102 to mean that 'the records of a review committee shall not be subject to subpoena in any civil suit,' including a suit against a hospital."

\* \* \* \* \* \*

"We are faced with an intent imperfectly expressed by the legislature. In order to give effect to that intent and to prevent the statutory scheme for hospital review committees from being emasculated, we construe section 12–43.5–102(3)(e) to preclude discovery of the records of those committees in any civil action.... The legislative intent was that the records of the review committee would be privileged, so that the committee could freely, openly, and with unfettered discretion exercise its collective professional judgment." 196 Colo. at 398–99, 586 P.2d at 37–38.[10]

### B.

The petitioner alternatively argues that the peer review privilege, to the extent applicable to his pending suit, should be limited to good faith actions by committee members. We find this argument unpersuasive.

■ A statute must be construed "in order that the true intent and meaning of the general assembly may be fully carried out." Section 2–4–212, C.R.S.1973. Although section 12–43.5–103(2) restricts the immunity granted to committee members to their good faith actions within the scope of their committee functions,[11] there is no such restrictive language in section 12–43.5–102(3)(e), which creates the peer review privilege. That the legislature was aware of its right to limit the *privilege* to good faith actions is obvious from the statutory *immunity* limitations. We believe the legislature deliberately omitted any good faith limitation in the peer review privilege in order to avoid any chilling effect on the review committee's statutory duty "to openly, honestly and objectively study and review the conduct of practice by members of the profession." Section 12–43.5–101(1), C.R.S.1973 (1978 Repl. Vol. 5). To engraft a good faith limitation on the peer review privilege would have the inevitable effect of derogating from the quality of the peer review process.[12] We therefore hold that

10. In *Sherman v. District Court*, Colo., 637 P.2d 378 (1981), we again acknowledged the important public interest in confidentiality of hospital inspection data, and noted that our expansive reading of the statutory privilege for peer review committee records in *Posey* reflected the legislature's balancing of that interest against the interest in liberal discovery.

Although the statutory provisions on the peer review privilege vary from jurisdiction to jurisdiction, several other courts have liberally construed the privilege in order to effectuate the statutory goals of the peer review process. *See, e.g., Samuelson v. Susen*, 576 F.2d 546 (3d Cir. 1978) (Ohio's statutory peer review privilege bars discovery of a committee's proceedings in defamation action by physician against committee members); *Matchett v. Superior Court*, 40 Cal.App.3d 623, 115 Cal.Rptr. 317 (1974) (statutory peer review privilege broadly construed to apply to transcripts of testimony before various types of medical disciplinary committees); *Straube v. Larson*, 287 Or. 357, 600 P.2d 371 (1979) (statutory privilege broadly construed in recognition of fact that "discussions at such committee meetings, to be of any value, must be frank, even brutal ....") *See generally, e.g., Bredice v. Doctors Hospital,*

*Inc.*, 50 F.R.D. 249 (D.D.C.1970) (common law privilege adopted), *aff'd on rhrg,* 51 F.R.D. 187 (D.D.C.1970), *aff'd* 479 F.2d 920 (1973); *Dade County Med. Ass'n v. Hlis*, 372 So.2d 117 (Fla. App.1979); *Franklin v. Blank*, 86 N.M. 585, 525 P.2d 945 (1974); *Oviatt v. Archbishop Bergan Mercy Hospital*, 191 Neb. 224, 214 N.W.2d 490 (1974).

11. Section 12–43.5–103(2), C.R.S.1973 (1978 Repl. Vol. 5), states:

"A member of a review committee or a witness before a review committee shall be immune from suit in any civil action brought by a physician who is the subject of review by such committee if such member or witness acts in good faith within the scope of the function of such committee, has made a reasonable effort to obtain the facts of the matter as to which he acts, and acts in the reasonable belief that the action taken by him is warranted by the facts."

12. We are not unmindful that pretrial discovery methods leading to information "reasonably calculated to lead to the discovery of admissible evidence" generally should be allowed to

where, as here, a physician's surgical privileges have been suspended as a result of recommendations by peer review committees and the physician commences an independent suit against the hospital, its peer review committees and the individual members of the committees, the records of the review committees pertaining to the physician's suspension are unqualifiedly privileged and, as such, are not subject to subpoena and pretrial discovery.

### IV.

We proceed to consider the petitioner's claim that the statutory privilege was waived when the minutes of the committee meetings were made available to him and he was informed of some of the evidence which the committees considered during their investigation of his surgical practices.

 A waiver of a privilege generally requires words or actions indicating an intent to forego the specific protection granted by the privilege. *See Weck v. District Court*, 158 Colo. 521, 408 P.2d 987 (1965); *Hill v. Hill*, 106 Colo. 492, 107 P.2d 597 (1940). As previously discussed, except for a judicial review proceeding, committee records are protected against subpoena and discovery in civil litigation. In this case several informal disclosures were made to the petitioner during the investigatory phase of the peer review process before the pending litigation had been commenced and, as conceded by the petitioner, the committee members who discussed the investigation were not acting on behalf of a review committee or the hospital. The respondent court conducted an evidentiary hearing on the waiver issue and determined that when the disclosures were made the committee members were not aware of the statutory privilege, did not intend to waive it, and lacked authority to effectively waive the privilege for their respective commit-

tees or Beth Israel. The waiver issue involved factual questions for the respondent court to resolve and we cannot say that, under the circumstances of this case, the respondent court's resolution of this issue was not supported by the evidence.

The rule to show cause is discharged.

ROVIRA, J., does not participate.

---

proceed without obstruction. C.R.C.P. 26(b); *see, e.g., Sherman v. District Court*, Colo., 637 P.2d 378 (1981); *Seymour v. District Court*, 196 Colo. 102, 581 P.2d 302 (1978); *Lucas v. District Court*, 140 Colo. 510, 345 P.2d 1064 (1959). However, the scope of pretrial discovery is expressly limited by C.R.C.P. 26(b)(1) to matters "not privileged." Although our construction of the statutory peer review privilege affects the manner in which the petitioner may develop his case, he has not been foreclosed from establishing his claims by evidence, both direct and circumstantial, which falls outside the scope of the privilege.