BETH ISRAEL HOSPITAL AND GER-
IATRIC CENTER, Petitioner,

v.

The DISTRICT COURT In and For the
CITY AND COUNTY OF DENVER;
The Honorable Daniel B. Sparr, one of
the Judges thereof; and Frank O. Fran-
co, M.D., Respondents.

No. 83SA147.

Supreme Court of Colorado,
En Banc.

May 29, 1984.

Hansen & Breit, P.C., John L. Breit, Susan Smith Fisher, Denver, Quiat, Dice & Associates, Andrew L. Quiat, Denver, for petitioner.

Roath & Brega, P.C., Robert E. Kendig, Denver, for respondents.

L. Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Ann Sayvetz, Asst. Atty. Gen., Denver, for amicus curiae, Colorado State Board of Medical Examiners.

ROVIRA, Justice.

Petitioner, Beth Israel Hospital and Geriatric Center (Beth Israel), filed this original proceeding pursuant to C.A.R. 21. It seeks an order prohibiting respondent district court from compelling petitioner to produce certain medical records. We issued a rule to show cause and now discharge the rule.

## I.

This is the second time we have issued a rule to show cause in the litigation between Dr. Franco and petitioner. In *Franco v. District Court*, 641 P.2d 922 (Colo.1982), we set out in detail the factual background of this litigation. We find no need to repeat it here.

In the first original proceeding, we considered Franco's request for the production of all notes, reports, memoranda, audits and written recommendations of the review committees of Beth Israel, as well as all documents from within and without the hospital relating to the review committee's recommendations. We denied the request, holding that section 12–43.5–101 to –103, 5 C.R.S. (1978), shielded such records from discovery in all civil litigation, except a judicial review proceeding. *Franco*, 641 P.2d at 927.

On return of the case to the district court, Franco filed another request for production of documents. He sought to inspect and copy the hospital's medical records of eighteen patients for whom he was the physician primarily responsible for their care and treatment.

The petitioner objected to the request on the ground that since the records were reviewed by its Surgical Committee as part of the process of reviewing the surgical services rendered by Franco, they are protected from disclosure pursuant to section 12–43.5–102(3)(e), 5 C.R.S. (1978). The thrust of petitioner's argument was that even though Franco was involved with the care of the patients whose medical records he wished to see, once the review committees considered the records in their deliberations, they became "records of a review committee" and therefore are privileged from discovery.

After a hearing on Franco's motion to compel, the respondent trial court framed the issue for decision as "whether the patient records here involved are in fact records of the peer review committee." The court concluded that the mere use of the patient records as part of the review committee proceedings did not make them "records of a review committee," and they were not written reports of witnesses, documents, and other materials which were privileged. *See Franco*, 641 P.2d at 925 n. 3. The motion to compel was granted.

## II.

The sole issue for resolution is whether, under the facts of this case, the patient medical records are privileged under section 12–43.5–102(3)(e), 5 C.R.S. (1978) and, hence, not discoverable. That statute is part of an article which is designed "to encourage discipline and control of the practice of health care rendered by physicians by committees made up of physicians licensed to practice in this state." Section 12–43.5–101, 5 C.R.S. (1978). To promote this peer review committee process, the statutory privilege in question, section 12–43.5–102(3)(e), provides: "The records of a

review committee shall not be subject to subpoena in any civil suit ...." In *Franco*, 641 P.2d 922, we determined, *inter alia*, that petitioner's Surgical Committee and Medical Executive Committee are "review committees" for the purposes of section 12–43.5–102(3)(e), and that the privilege applies in Franco's suit. Here, petitioner argues that the patient medical records are "records of a review committee" within the meaning of section 12–43.5–102(3)(e), and, therefore, privileged.

■ Legislative intent is the polestar of statutory construction. *E.g., Franco*, 641 P.2d at 929; *Posey v. District Court*, 196 Colo. 396, 586 P.2d 36 (1978); *People v. Lee*, 180 Colo. 376, 506 P.2d 136 (1973). In *Posey*, 196 Colo. at 399, 586 P.2d at 38, we said: "[t]he legislative intent was that the records of the review committee would be privileged, so that the committee could freely, openly, and with unfettered discretion exercise its collective professional judgment." We discussed this idea more extensively in *Franco:*

> "It would be unreasonable to impose upon committee members a statutory duty to 'openly, honestly, and objectively study and review' [1] the conduct of practicing members of the medical profession if the records of their study and review were available for discovery in subsequent litigation seeking money damages against the hospital, its review committees and the individual members thereof for disciplinary action imposed in the peer review process. In addition, members of the medical profession cannot be expected to initiate or willingly participate in a peer review investigation if their testimony and reports may be subjected to discovery in subsequent civil litigation involving issues far beyond a meaningful judicial review of the committee's action."

---

1. Section 12–43.5–101(1) imposes this duty on health care peer review committees.

2. The record before us does not include the hospital's medical records that Franco seeks. If the records contain any materials added as a

641 P.2d at 928–29. Here, Franco does not seek to obtain records of the committee's discussion or of any testimony or report filed by another professional who participated in the committees' reviews. Rather, he wishes to obtain his own patients' medical records. Franco's request for discovery poses no threat to the free, unfettered discussion among committee members and other participants that the legislature intended to protect through the privilege granted by section 12–43.5–102(3)(e).[2]

■ In general, four conditions are necessary to the recognition of a privilege against the disclosure of communications:

> "(1) The communications must originate in a confidence that they will not be disclosed.
> (2) This element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties.
> (3) The relation must be one which in the opinion of the community ought to be fostered.
> (4) The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation."

8 J. Wigmore, *Evidence in Trials at Common Law*, § 2285 (McNaughton rev. 1961) (emphases deleted); *see, e.g., Neusteter v. District Court*, 675 P.2d 1 (Colo.1984); *Lindsey v. People*, 66 Colo. 343, 181 P. 531 (1919); *In re Doe*, 711 F.2d 1187 (2d Cir. 1983); *Tabor v. Commonwealth*, 625 S.W.2d 571 (Ky.1982). Here, the patient medical records did not originate in a confidence that they would not be disclosed to Franco. Presumably all parties would agree that Franco, as the physician primarily responsible for the care and treatment of these patients, had access to these files before they were reviewed by the committees. Petitioner does not argue that the

result of the review process, then those materials shall be privileged and nondiscoverable since discovery of them might chill the frank, free review process that the legislature intended to promote.

records were always privileged, but, rather, that they became privileged when they were given to the committees. In addition, the record before us does not show that Franco intends to breach the confidence placed in him by any of these patients. We see no reason why, for the purposes of Franco's suit, the identities of these patients would be disclosed. Franco has requested the records according to the cases' numbers, not the patients' names.

▆▆▆ Petitioner argues that allowing Franco to see his patients' medical records would defeat the legislature's objective of establishing statutorily granted judicial review of the committee's actions as the primary means of redress for discipline imposed in the review process. *Franco*, 641 P.2d at 929; *see* section 12–43.5–102, 5 C.R.S. (1978). But in *Franco*, we said:

> "Our reference to judicial review as the primary means of legal redress for disciplinary action resulting from the peer review process is not intended to imply that a physician may not forego that remedy and, as here, bring an action in tort against the hospital, its review committees and the committee members. Rather, our remarks are intended to point up the legislature's intent to prohibit discovery of committee records in such an action."

641 P.2d at 929 n. 9. Our decision here does not disturb judicial review as the primary means of redress, and allows the kinds of actions in tort contemplated in *Franco*, *Id.* Section 12–43.5–103(2, 3), 5 C.R.S. (1978), provides broad tort immunities for those who participate in the peer review process:

> "(2) A member of a review committee or a witness before a review committee shall be immune from suit in any civil action brought by a physician who is the subject of review by such committee if such member or witness acts in good faith within the scope of the function of such committee, has made a reasonable effort to obtain the facts of the matter as to which he acts, and acts in the reason-

able belief that the action taken by him is warranted by the facts.

> (3) The board of trustees of a hospital and the individual members of a board of trustees shall be immune from suit for damages in a civil action brought by a physician who is the subject of action taken in good faith by such board if the action is based upon recommendations of the review committee; but nothing in this subsection (3) shall preclude judicial review of the action of a board of trustees."

Therefore, disciplined physicians who sue in tort must allege and prove that peer review participants have exceeded the bounds of good faith and reasonable belief, as set forth above, and in such actions cannot use materials or discussions generated as a result of the peer review process. In contrast, judicial review of the peer review process is not so severely limited. *See* section 12–43.5–102(3)(e), 5 C.R.S. (1978); *see Franco*, 641 P.2d at 928.

▆▆▆ Another factor supporting our decision is the general policy favoring discovery. " '[T]he range of discovery is quite broad and discovery rules are to be liberally interpreted in order to effectuate the full extent of their truth-seeking purpose.' " *Jenkins v. District Court*, 676 P.2d 1201, 1205 (Colo.1984) (quoting *Phillips v. District Court*, 194 Colo. 455, 457, 573 P.2d 553, 555 (1978)). Our holding today promotes the truth-seeking purpose of discovery rules without narrowing the scope of the privilege created by the legislature.

▆▆▆ We conclude that the patient medical records sought by Franco are not privileged under section 12–43.5–102(3)(e), 5 C.R.S. (1978). Therefore, the trial court was correct in granting Franco's request for production of them. *See* C.R.C.P. 26(b)(1). The cause is remanded for further proceedings consistent with this opinion.

The rule is discharged.

QUINN, J., dissents.

DUBOFSKY and NEIGHBORS, JJ., join in the dissent.

QUINN, Justice, dissenting:

I dissent. The hospital records that Dr. Franco seeks to inspect and copy are the very same records considered by the peer review committee of Beth Israel Hospital in the course of an adjudicatory hearing resulting in suspension of Franco's surgical privileges at the hospital. As such, these records are protected by the statutory privilege created by section 12–43.5–102(3)(e), 5 C.R.S. (1978), and, therefore, are not discoverable in Franco's pending lawsuit against Beth Israel Hospital, its Surgical and Medical Executive Committees, and the committee members for intentional infliction of emotional distress, outrageous misconduct, and conspiracy to injure his personal and professional reputation.

The statutory design of Colorado's peer review legislation is to permit peer review committees "to openly, honestly, and objectively study and review the conduct of practice" by a physician, § 12–43.5–101(1), 5 C.R.S. (1978), with the objectives of providing the public with effective health care service at the lowest reasonable cost, § 12–43.5–101(2), 5 C.R.S. (1978), and of protecting patients against the unauthorized, unqualified, and improper practice of medicine, § 12–43.5–102(1), 5 C.R.S. (1978). Section 12–43.5–102(3)(e) provides as follows:

> "The records of a review committee shall not be subject to subpoena in any civil suit against the physician, but, at the request of the Colorado state board of medical examiners, the board shall be provided a summary of the findings, recommendations, and disposition of actions taken by a review committee. Said board may also request, and shall receive, a summary of the actions of the hospital board of trustees in regard to recommendations of a review committee. The records of a review committee or a hospital board may be subpoenaed and a suit brought by the physician seeking judicial review of any action of the review committee or a hospital board."

In *Franco v. District Court*, 641 P.2d 922 (Colo.1982), after examining the structure and purpose of the statutory peer review process, we concluded that the statutory privilege was not confined to malpractice actions against the physician, but rather was intended to shield the committee records from subpoena or discovery in all civil litigation except a judicial review proceeding. This conclusion found support not only in the legislative choice of "judicial review as the primary means of redress for a physician against whom disciplinary action has been imposed in the peer review process," *Franco*, 641 P.2d at 927, but also in the underlying purposes of the statutory review process itself. We there stated:

> "Admittedly, the physician's exercise of his statutory right to judicial review will result in the disclosure to him of testimony and other material presented during the peer review proceedings, as well as the review committee's comments and recommendations. However, we do not believe these limited disclosures, which are conducive to procedural fairness, derogate from the legislature's intent to shield such information from subpoena and discovery in litigation not involving judicial review of the disciplinary action.

> \* \* \* \* \* \*

> "Considering the significant public interest in effective health care at the lowest reasonable cost, the statutory peer review process, in our opinion, represents a legislative choice of medical staff candor at the expense of pretrial discovery in any lawsuit not involving a judicial review of the committee's recommendations and resulting disciplinary action by the hospital's governing board. Restricting the privilege only to malpractice actions against a physician, as advocated by the petitioner, would thwart the legislative declaration of purpose in section 12–43.5–101." 641 P.2d at 928–29.

The critical question in this proceeding is whether the hospital records considered by Beth Israel Hospital's peer review committee in an adjudicatory hearing resulting in discipline are "records of a review committee" within the intendment of section 12–

43.5–102(3)(e).[1] I conclude that they are. We observed in *Franco* that "[c]ommittee records may include the testimony and written reports of witnesses, documents and other material presented to the committee, and the committee's notes, memoranda, minutes and other records relating to its investigatory and hearing functions." 641 P.2d at 925 n. 3. The hospital records sought by Franco in his pending lawsuit consist of factual material presented to the committee in the course of the adjudicatory phase of the peer review process. These records no less than the testimony and written reports of witnesses are part and parcel of the evidentiary predicate underlying the committee's disciplinary decision and, as such, should be immunized from disclosure in any civil action except a judicial review proceeding. A contrary rule, in my opinion, not only discourages resort to judicial review as the corrective for allegedly inappropriate disciplinary action, but, more important, undercuts the confidentiality essential to the committee's open, honest, and objective study and review of the conduct of medical practitioners. Indeed, if Franco is entitled to inspect and copy the hospital records in this case, I am hard pressed to find any principled basis to deny a discovery request for the testimony of witnesses, written reports, or any other material presented to the committee at the adjudicatory hearing.

Moreover, in some instances the disclosure of hospital records will be tantamount to revealing the source of the complaint resulting in peer review discipline. Under section 12–43.5–102(3)(a), 5 C.R.S. (1978), a patient or a health care professional may initiate a complaint with a peer review committee for investigation into a physician's competence. A physician who foregoes a judicial review of the disciplinary decision might well be able to trace the source of the complaint if the hospital records considered by the peer review committee are made available to him in a civil action such as the one present here. Disclosure of such information may result in the person initiating the investigation being joined as a party defendant, thereby discouraging the reporting of inappropriate medical practices and frustrating the legislative goal of establishing judicial review as the primary method to redress a disciplinary sanction.

I see no significance in the fact that the hospital records may have been those of Franco's patients or that these records may have been available to him when he was previously attending them as their doctor. Once the peer review committee considered the hospital records in the adjudicatory phase of the peer review process, they became the records of the committee, just as any other testimony presented to the committee, and were thus entitled to the full protection of the statutory privilege. Having elected to waive his statutory right to seek judicial review of the suspension order, Franco should be limited to developing his claims by evidence fully outside the scope of the peer review privilege.

I would make the rule absolute.

I am authorized to say that DUBOFSKY and NEIGHBORS, JJ., join in this dissenting opinion.

---

**1.** It strikes me as ironic that the hospital records sought here by Franco were part of the discovery package he unsuccessfully attempted to obtain in the former proceeding in this court. We noted at that time that neither Franco nor any other party in interest raised any issue "as to whether the information sought by [Franco] is part of 'the records of a review committee' within the meaning of section 12–43.5–102(3)(e) ...." *Franco v. District Court*, 641 P.2d 922, 925 n. 3. Franco claimed in the former proceeding that: (1) the peer review privilege was limited only to malpractice cases against a physician and was inapplicable to his pending claim for money damages and injunctive relief against Beth Israel Hospital, its peer review committees, and the committee members; (2) even if the statutory privilege was applicable to his pending lawsuit, the privilege should be limited to good faith action by committee members. Having lost on these issues, Franco now disavows what can only be viewed as a previous concession that the hospital records were part of the records of the review committee.