Joan Offutt, Director Colorado Health Data Commission 1313 Sherman Street Denver, CO 80203
Dear Ms. Offutt:
I write in response to your request for a legal opinion dated June 2, 1988.
QUESTION PRESENTED FOR REVIEW AND CONCLUSIONS
Does either section 25-3-109 (H.B. 1037) (1988) or section12-43.5-101 through 103, C.R.S. (1985 1987 Supp.), authorize a health care facility to refuse to submit information to the Health Data Commission (HDC)?
Conclusion: No.
ANALYSIS
You state that two hospitals have refused to provide information in response to a survey issued by the HDC pursuant to rule 87-2,8 CCR 1305-1 (1-88). These hospitals base their refusals on H.B. 1037. H.B. 1037 added section 25-3-109, which makes confidential certain information derived from quality management functions performed by health care facilities.
In essence, the hospitals argue that section 25-3-109 (H.B. 1037) (1988) impliedly repeals the authority of the HDC to obtain information regarding quality management programs. Statutory repeal by implication is not favored in Colorado. Uberoi v.University of Colorado, 686 P.2d 785, 788 (Colo. 1984);Sutherland Statutory Construction section 23.10, 4th Ed. (1985). If two provisions can be construed to avoid inconsistency, such construction will be adopted. ColoradoState Board of Medical Examiners v. Jorgensen, 198 Colo. 275,281, 599 P.2d 869, 873-74 (1979). Only when there is a manifest inconsistency between a later and an earlier statute will repeal be held to have occurred. Fuhrer v. Departmentof Motor Vehicles, 197 Colo. 325, 328, 592 P.2d 402, 404
(1979).
In December 1987, the Colorado Department of Health passed its quality management rules. Chapter 2, part 3, 6 CCR 1011-1, (1-88). The rules require most licensed health facilities to submit a quality management program to the Department of Health for its approval. The rules ensure that health care facilities have a program in place which will adequately evaluate the quality of patient care.
Representatives of the health facilities industry believed that the implementation of the Health Department rules would expose health facilities to greater malpractice liability. They argued that the information gathered pursuant to the quality management programs could be used as evidence against the facilities to show a pattern and practice of poor or substandard care. Fear of malpractice actions would chill participation in the quality assurance process, thereby inhibiting assessment and improvement of patient care. § h1 § S
In response to the concerns of the health facilities industry, the Department of Health and industry representatives drafted and presented H.B. 1037. H.B. 1037 governs information obtained pursuant to a quality management program approved by the Department of Health. Any records, reports or other information designed to identify, evaluate and reduce the risk of injuries associated with care and to improve the quality of patient care are confidential. The Department of Health and other appropriate regulatory agencies have access to the information. Section25-3-109(3) (H.B. 1037) (1988). Any information disclosed to a regulatory agency remains confidential. Section 25-3-109(7)(b) (H.B. 1037) (1988). Each facility may voluntarily release any quality management record or information as long as patient-identifying information is not released without the patients' consent. Section 25-3-109(5) (H.B. 1037) (1988).
Throughout the course of the legislative hearings, testimony from the legislative sponsors, the advocates for the health facilities industry and representatives of the Department of Health disclosed that the purpose of section 25-3-109 is to enhance patient care by protecting from litigation persons or groups which participate in an approved quality assurance program. When introducing the bill to the Senate Health Education, Welfare and Institutions (HEWI) Committee on March 2, 1988, Senator Ray Powers stated that the primary purpose was to protect participants in the quality assurance process from "prosecution." § h2 § s Almost all of the testimony before the Senate HEWI Committee by the health facilities representative concluded that the major obstacle to efficient quality management programs was fear of involvement in litigation. § h3 § S
The HDC was established to "collect, analyze and disseminate data to encourage competition and informed decisions by users in the health care industry." Section 25-28-103(1), C.R.S. (1987 Supp.). The HDC may require health care providers to submit to the HDC data reasonably necessary to carry out its purpose, including clinical findings and severity of illness information. Sections 25-28-104(2)(a), 3(b) and (c), C.R.S. (1987 Supp.). The data are not public records. Section 25-28-104(1)(b), C.R.S. (1987 Supp.). Notwithstanding any other provision of the law to the contrary, the Commission or its designee may disclose information to interested persons. Section 25-28-106(1)(c), C.R.S. (1987 Supp.). The HDC may also promulgate rules to carry out its duties. Section 25-28-104(5), C.R.S. (1987 Supp.).
Pursuant to its authority to promulgate rules, the HDC passed rules 87-2 and 87-3, 8 CCR 1305-1 (1-88). Under rule 87-2, the HDC can request information regarding quality assurance methods and results. Under rule 87-3, the HDC may request information regarding the measurement and reporting of hospital inpatient severity and morbidity.
There is no manifest inconsistency between sections 25-28-104(3)(b) and (c), C.R.S. (1987 Supp.) and section 25-3-109 (H.B. 1037) (1988). Section 25-3-109 (H.B. 1037) (1988) governs only information generated pursuant to a quality management program approved by the Department of Health. If the information comes from a quality management program which has not been approved, then section 25-3-109 (H.B. 1037) (1988) is inapplicable.
The HDC is also entitled to obtain information generated from approved programs. Section 25-3-109(3) (H.B. 1037) (1988) allows state agencies to have access to information garnered from a quality assurance program. Disclosure of information generated by the quality management programs to the HDC does not remove the protections of section 25-3-109. Section 109 precludes subpoena of such information from the HDC, and the information is not admissible in evidence. The disclosure of information (H.B.) (1988) to the HDC does not limit the immunity granted under section 25-3-109(6) (H.B. 1037) (1988). Giving information to the HDC will not enhance the likelihood of a malpractice suit against participants in the quality assurance process.
You have also asked whether sections 12-43.5-101 through 103, C.R.S. (1985 1987 Supp.), authorize a health care facility to refuse to release information to the HDC. Article 43.5 of Title 12 sets forth the requirements of physician peer review committees and the scope of their immunity from liability. I conclude that the HDC may request information which is protected under section 12-43.5-102(3)(e).
Section 12-43.5-102(3) provides, in pertinent part:
 (e) The records of a review committee shall not be subject to subpoena in any civil suit against the physician. . . .
Section 12-43.5-102(3)(e) does not create an all-inclusive privilege. Sherman v. District Court, 637 P.2d 378, 384
(Colo. 1981). The privilege granted pursuant to section 12-43.5-102(3)(e) extends only to civil suits brought against the physician or against a hospital by a physician other than on judicial review. Franco v. District Court in and for theCity and County of Denver, 641 P.2d 922, 928-929 (Colo. 1982). The legislature determined that fear of liability in malpractice suits was the primary hindrance to the open and unfettered exercise of professional judgment. Section12-43.5-101(2), C.R.S. (1985); Posey v. District Court,196 Colo. 396, 586 P.2d 36 (1978).
Disclosure of information to the HDC which is contained in peer review reports will not narrow the protection established in sections 12-43.5-102 and 103. Members of a peer review committee will retain their immunity. Section 12-43.5-103, C.R.S. (1985 
1987 Supp.). Section 12-43.5-102(3)(e) will preclude subpoena of information supplied to the HDC.
Moreover, the legislative purpose of the HDC statute complements the legislative purpose of section 12-43.5-101. The health care profession must "do all things necessary to provide the public with services of proper quality at the lowest reasonable cost." Section 12-43.5-101(2), C.R.S. (1985). The HDC must encourage competition and informed decisions by users in the health care industry. Section 25-28-103(1), C.R.S. (1987 Supp.). The legislature intended both to help health care facilities improve patient care by removing the spectre of increased liabilities and to inform the public about the cost and type of care provided by a particular facility.
SUMMARY
Section 25-3-109 (H.B. 1037) (1988) and section 12-43.5-101
through 103, C.R.S. (1985 1987 Supp.) do not authorize health care facilities to refuse to supply information to the Health Data Commission.
§ h1 § s Testimony of Gary Davis, Senate Health, Education Welfare and Institutions Committee, March 11, 1988.
§ h2 § s Senate Health, Education, Welfare and Institutions Committee, March 2, 1988.
§ h3 § s Senate Health, Education, Welfare and Institutions Committee, March 2 and 11, 1988.
Sincerely,
 DUANE WOODARD Attorney General
STATUTES HEALTH PUBLIC RECORDS
H.B. 1037 (1988)
Section 25-28-101 to 110 (1987 Supp.) Section 12-43.5-102, C.R.S. (1988)
LOCAL AFFAIRS DEPT.
Section 25-3-109 (H.B. 1037) and section 12-43.5-102, C.R.S. (1985) do not authorize health care facilities to refuse to supply information to the Health Data Commission.