**Short v. Pavlides**

C.P. of Philadelphia County, nos. 0516 and 2724.

*Marsha F. Santangelo,* for plaintiff.
*Peter Samson,* for defendants.

MAIER, *J.,* April 3, 1996—

## CONSOLIDATED OPINION AND ORDER

Before the court, in separate matters, are requests to produce documents, *i.e.,* residency evaluation records and "all credential committee records" pertaining to Dr. Bobrowski and "all credential committee records" pertaining to defendant Dr. Constantinos A. Pavlides. Dr. Bobrowski and Dr. Pavlides are alleged to have committed malpractice and the hospital, Hahnemann University Hospital, is alleged to be negligent under a corporate liability theory similar to that set forth in *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991).

This court has issued opinions in relation to residency evaluation and credentials files and incorporates those opinions herein. *Resnick v. Hahnemann University Hospital,* 28 Phila. 561 (1995). Additional arguments have been raised and additional material has been reviewed which prompts the court to issue this consolidated opinion in further support of the conclusion enunciated.

The Pennsylvania Peer Review Act, 63 P.S. §425.1 through 425.4, while short in length, has produced much consternation and lengthy interpretation by plaintiffs and defendants alike.

"425.1 SHORT TITLE. This act may be cited as the *'Peer Review Protection Act.'*

"425.2 DEFINITIONS. As used in this act: *'Peer review'* means the procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care re-

view, claims review, and the compliance of a hospital, nursing home or convalescent home or other health care facility operated by a professional health care provider with the standards set by an association of health care providers and with applicable laws, rules and regulations.

" *'Professional health care provider'* means individuals or organizations who are approved, licensed or otherwise regulated to practice or operate in the health care field under the laws of the Commonwealth, including, but not limited to, the following individuals or organizations:

"(1) A physician; (2) a dentist; (3) a podiatrist; (4) a chiropractor; (5) an optometrist; (6) a psychologist; (7) a pharmacist; (8) a registered or practical nurse; (9) a physical therapist; (10) an administrator of a hospital, a nursing or convalescent home, or other health care facility; (11) a corporation or other organization operating a hospital, a nursing or convalescent home or other health care facility.

" *'Professional society'* includes medical, psychological, nursing, dental, optometric, pharmaceutical, chiropractic and podiatric organizations having as members at least a majority of the eligible licentiates in the area or health care facility or agency served by the particular society.

" *'Review organization'* means any committee engaging in peer review, including a hospital utilization review committee, a hospital tissue committee, a health insurance review committee, a hospital plan corporation review committee, a professional health service plan review committee, a dental review committee, a physicians' advisory committee, a nursing advisory committee, any committee established pursuant to the medical assistance program, and any committee established

by one or more state or local professional societies, to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care. It shall also mean any hospital board, committee or individual reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto. It shall also mean a committee of an association of professional health care providers reviewing the operation of hospitals, nursing homes, convalescent homes or other health care facilities.

"425.3 IMMUNITY FROM LIABILITY.

"(a) Notwithstanding any other provision of law, no person providing information to any review organization shall be held, by reason of having provided such information, to have violated any criminal law, or to be civilly liable under any law, unless:

"(1) such information is unrelated to the performance of the duties and functions of such review organization, or

"(2) such information is false and the person providing such information knew, or had reason to believe, that such information was false.

"(b)(1) No individual who, as a member or employee of any review organization or who furnishes professional counsel or services to such organization, shall be held by reason of the performance by him of any duty, function, or activity authorized or required of review organizations, to have violated any criminal law, or to be civilly liable under any law, provided he has exercised due care.

"(2) The provisions of paragraph (1) of this subsection shall not apply with respect to any action taken by any individual if such individual, in taking such action, was motivated by malice toward any person affected by such action.

"425.4 CONFIDENTIALITY OF REVIEW ORGANIZATION'S RECORDS.

"The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, that information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings."

While the statute, *supra,* adopted by the Pennsylvania House of Representatives and Senate must be interpreted to give meaning to the words in those statutes, a contra action is applied to captions to the various sections of those statutes. The caption to a particular section

of a statute can be used only to give meaning to the statute, and not in a manner which is contrary to the words of the statute. 1 Pa.C.S. §1924. *Here,* the caption of section 425.4 states, "Confidentiality of review organization's records," but the text and any clear reading of the statute indicates that, "The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery . . . ." A reader of section 425.4 must conclude that the Pennsylvania Legislature was granting confidentiality for peer review committees' proceedings and records, as well as to testimony of persons who testified at meetings of peer review committees. However, that confidentiality does not extend to information, documents or records, which are otherwise available from original sources.

Accordingly, even though "individuals reviewing professional qualifications or activities of a medical staff or applicants thereto" are included in the definition of a review organization, individuals have not been defined as a review committee, and are not entitled to confidentiality under section 425.4. Since section 425.4 confers confidentiality on review committees' records and proceedings including testimony before a review committee, but does not grant that privilege to review organizations, that confidentiality does not pertain to individuals, even if they are a peer review organization.

However, those persons or other entities identified as review organizations, which are not peer review committees, are granted immunity from liability under most circumstances by section 425.3 of the *Act.*

Apparently by distinguishing a peer review committee from peer review organizations (which includes individual evaluators), the legislature intended to offer different benefits to a review organization, *i.e.,* immunity

from legal process, while offering the peer review committee both immunity and confidentiality in an attempt to strike a fair balance and allow peer review committee studies to solve medical procedure problems and insure better practice while still allowing the discovery of material, such as we have *here,* which might be damaging to individual defendants, but still allowing frank and candid discussion from individual evaluators by granting immunity from legal process.

Nor does public policy support a proposition, which would allow individuals or boards who have derogatory information, which may lead to the discovery of admissible evidence bearing on the ability of the individual to render competent medical treatment, to disregard or fail to disclose that information, either purposely or negligently, simply to avoid liability for the inappropriate conduct of that individual alleged to have committed medical malpractice.

In addition, to allow a defendant, charged with a *Thompson v. Nason Hospital,* medical malpractice action, to refuse to release material pertinent to an individual medical provider, would allow an individual to be maligned within their profession without the individual ever being able to know the reason why, other than the final action of some committee.

Furthermore, even if material is confidential under the act, that cloak of confidentiality is lifted from any "information, documents or records otherwise available from original sources . . . ." 63 P.S. §425.4.

*Here,* the court, in camera, has reviewed the residence evaluation file of Dr. Bobrowski, and, presumably, that file is representative of residency evaluation files generally. Each pre-printed form included is checkmarked and signed by an individual doctor who has evaluated Dr. Bobrowski and in some cases, has included positive

written comments thereon. This court finds it hard to believe that the doctors who evaluated Dr. Bobrowski have not kept copies of those evaluation forms nor has any argument or evidence been presented to suggest otherwise. That data is then available from the evaluating doctor, *i.e.,* an original source, and would therefore not be subject to section 425.4 confidentiality.

Even if the evaluation is not available from an original source and is confidential peer review material, the individual evaluator may be questioned as to their evaluation of the defendant. The plaintiff may then be entitled to depose each evaluator concerning the evaluation which would be time-consuming and wasteful of litigant's time and money, albeit necessary to the prosecution of a case.

However, if the documents are not available from another original source, they are still discoverable if a *Thompson v. Nason Hospital,* count has been properly included in the complaint. Ruling otherwise would vitiate the Supreme Court's decision in *Thompson v. Nason Hospital, supra,* and could potentially allow medical providers to avoid producing documents which could show negligent hiring or supervision of medical professions, which, as stated earlier, would clearly be in violation of public policy to allow people to cover up for incompetent physicians or to allow properly functioning physicians to be maligned with false testimony.

Of course, a party is always free to seek redaction of specific areas of evaluation reports or credentials files where the material contained therein would not be likely to lead to the discovery of admissible evidence.

For all of the reasons set forth above, the resident's evaluation file of Dr. Bobrowski is discoverable, and the protective order sought to prevent discovery of those documents is denied.

We turn now to an examination of the request to review the "credential committee records" pertaining to Dr. Bobrowski and Dr. Pavlides, as well as the request for protective order.

Since this court has in the past, on several occasions, authorized the release of the credentials file for various parties, as opposed to the full and complete copy of any credentials committee records, the court ordered the defendant to produce the credentials file for Dr. Pavlides for in camera inspection by the court to have a complete record so that litigants may be aware of this court's opinion on production of credentials files.

The credentials file, which was not an atypical credentials file, was examined in camera by the court and was found to contain the following documents:

| Pages Marked: | Contained: |
| --- | --- |
| A1. | Informational letter to the defendant. |
| A2. | A table of contents. |
| A3-A9. | An application. |
| A10-A11. | Curriculum vitae. |
| A12. | |
| A13. | A statement of the applicant. |
| B1-B10. | Licenses, diplomas and insurance information. |
| C. | Letters forwarding applications for privileges, applications and curriculum vitae. |
| D. | Letters in agreement to abide by hospital rules. |
| E. | Practice profile. |
| F. | Delineation of privileges. |
| G. | Delineation of clinical privileges, applications and attendance certificates. |
| H. | Delineation of privileges. |

I.	Insurance, licenses, reappointment letters; evaluation of staff members.

J.	License query, clinical reference questions, educational information, photostat of medical directory.

K.	Reappointment letter, evaluation of medical staff (although malpractice information is mentioned, it is not attached).

L.	Reappointment application.

M.	License information and letters seeking information.

N-O-P.	Hospital activities records, which appear to be a summary of charges and procedures generated by hospitals that are processing.

Q-R.	Insurance information as reappointment letter application.

S4-S6.	Evaluations and there are attendance at courses and licensing information.

T.	A sufficient profile again generated by data-processing area, a performance profile which, again, is data-processing produced hospital records of status and privileged delineation insurance information and licensing information.

U.	Contains an evaluation, letter requesting information, attendance certificate, license information, insurance, re-application letter.

V.	Licensing information, a peer review manual, delineation of privileges.

W.	Privileged delineation.

X.	Evaluations for bi-annual reappointment accompanied by pre-printed forms with certain procedures circulated, which apparently delineate the areas for which Dr.

Pavlides feels he may practice without any type of supervision.

Y.     Curriculum vitae, license insurance information, attendance certificates, perative procedures, statistics and letters of recommendation.

All materials listed in Dr. Pavlides' credentials file, which were submitted to the court, appear to be available from various original sources. For example, Dr. Pavlides signed many documents and other doctors signed evaluation forms. Presumably, Dr. Pavlides and evaluators keep copies of items signed, for future reference. In addition, licensing and insurance information and a multitude of materials are included, which are available from original sources. If the documents cannot be examined, a litigant could discover the information on the documents by examining the individual, who authored the document, *e.g.,* Commonwealth of Pennsylvania, the insurance companies, the defendant, inter alia. To avoid this truncated and complicated discovery activity is the very reason why the Peer Review Act exempts those items which are available from an original source from the confidentiality of section 425.4.

For the reasons set forth, *supra,* concerning the evaluation reports, they are, of course, also discoverable.

Hence, items found in a typical credentials file will normally be discoverable as available from an original source. Of course, this is subject to redaction by the defendant, if certain material should be protected from discovery for particular reasons, such as not leading to the discovery of admissible evidence or peer review committee records, inter alia.

Generally, the court has and would find that a request to produce "all credential committee records" as overbroad and perhaps violative of the Peer Review Act

as including "proceedings and records" of a peer review committee or notes of hearings or testimony before a peer review committee. However, *here,* where the full credentials file has been examined in camera as set forth *supra,* does not contain "proceedings and records," et al., those records submitted are discoverable. See also, *Resnick v. Hahnemann Hospital, supra.*

Accordingly, the request for a protective order is *denied.*