## Scrima v. UPMC Mercy

C.P. of Allegheny County, No GD-11-109474

*Michael T. Collis*, for plaintiffs.

*Richard J. Federowicz* and *Rebecca J. Maziarz*, for defendant.

WETTICK, *J.*, September 9, 2013—Plaintiffs have requested documents containing information created or compiled by hospital staff relevant to the injuries sustained by the plaintiff-patient while under the hospital's care. The request is limited to two documents identified by

defendant as protected by the Peer Review Protection Act, 63 P.S. §§425.1-425.4: a timeline/chronology of events prepared by Tammy Vogel, RN, and a reeducation plan prepared by LaSalle Desmet, RN.

Plaintiffs respond that these documents were not prepared solely for purposes of peer review and contain factual information otherwise available from original sources, which circumstances obviate the Act's protections. Thus, they are not protected by the Peer Review Protection Act.

The Act declares confidential the records and proceedings of a review committee, established for the purpose of reviewing information related to evaluating and improving patient care. The Act states:

*The proceedings and records of a review committee* shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: *Provided, however. That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee,* nor should any person who testifies before such committee

or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings. (Emphasis added.)

63 P.S. §425.4.

The threshold question is whether the subject documents constitute the "proceedings and records of a review committee." Some common pleas courts appear to have applied a mechanistic definition of the term "review committee." *See Short v. Pavlides*, 33 Pa. D. & C.4th 118 (Phila. C.P. 1996) (concluding that only information generated by a formal committee, not by individuals, is protected). However, the Superior Court has implicitly adopted a broader definition. *See, e.g., Troescher v. Grody*, 869 A.2d 1014, 1022 (Pa. Super. 2005) (concluding the terms "committee" and "individual" are used interchangeably under the Act, and to adopt a rigid distinction would undermine the peer review privilege).

For this reason, and because plaintiffs have not challenged this aspect of the peer review, the only question before this court is whether the two documents "are otherwise available from original sources," which are not shielded from discovery by the Act.

Plaintiffs contend that the two documents are relevant hospital records created by hospital staff and, thus, subject to discovery. Defendant contends that these documents are protected because they were created following receipt of an incident report for purposes of improving hospital care.

Tammy Vogel was the Unit Director of the unit where plaintiff-husband was a patient.

After receiving a copy of an incident report regarding a deep tissue injury that plaintiff-husband sustained, Ms. Vogel compiled information relating to the care of the patient. Ms. Vogel reviewed the patient's medical records and discussed his condition with several of his care providers for the purpose of considering whether to formulate a reeducation plan for the nursing staff. Although Ms. Vogel did not take notes of individual discussions with plaintiff's care providers in the process of her ongoing review, she created and maintained a document summarizing the facts gleaned from those discussions and from other sources, including the incident report and plaintiff's medical records (the "timeline/chronology"). Ms. Vogel subsequently asked LaSalle Desmet, RN and Skin Representative, to assist in preparing a reeducation plan for presentation to the nursing staff (the "reeducation plan"). *See* def.'s br. in supp. of def.'s resp. to pls.' am. mot. to compel at 2-3.

When asked why she performed the investigation, Ms. Vogel testified at page 26 of her deposition that "it's assumed that I review any event on my unit" with or without the direction of a supervisor. Also *see* Vogel affidavit ¶4 ("After receiving a copy of the incident report regarding [plaintiff's] deep tissue injury, as Unit Director, I conducted [an investigation] which involved interviewing various nurses on my unit as well as Lori O'Shea, the wound care nurse.").

Under the Superior Court's most recent interpretation of the scope of the Peer Review Protection Act, the purpose underlying the creation of the documents is the most relevant consideration.[1] *See Piroli v. Lodico,* 909

---

1. There is no claim that Ms. Vogel, in undertaking to review "any event on [her] unit," would do so for any reason other than for peer

A.2d 846, 852-53 (Pa. Super. 2006); *Dodson v. DeLeo*, 872 A.2d 1237 (Pa. Super. 2005); and *Troescher v. Grody*, 869 A.2d at 1022.

The Peer Review Protection Act culminated from the General Assembly's determination that "because of the expertise and level of skill required in the practice of medicine, the medical profession itself is in the best position to police its own activities." *Young v. Western Pa. Hosp.*, 722 A.2d 153, 156 (Pa. Super. 1998). Furthermore, as this court has noted, the honest, potentially critical evaluation of one care provider by another envisioned under the Act demands the strictest confidentiality of the proceedings to ensure the conclusions reached are not tainted by the fear of future legal repercussions. *O'Neill v. McKeesport Hosp.*, 48 Pa. D. & C.3d 115, 121-22 (Allegheny C.P. 1987). For this reason, the General Assembly, in its effort to encourage meaningful self-criticism, has sought to shield from external inquiry the findings, evaluations, recommendations and opinions generated in the internal review process. *Id.*

Although the Act protects generally the work of a peer review committee, its protections do not extend to documents that are available from "original sources." There are common pleas courts that have adopted an expansive view of the original source exception, concluding that only the recommendations for action produced by the committee are shielded from disclosure, while documents created in preparation for a review necessarily preexisted the review and, therefore, constitute separate "original sources." *See, e.g., Resnick v. Hahnemann Univ. Hosp.*, 28 Phila. Co. Rptr. 561, 1995 WL 1315946 (Phila. C.P.

evaluation. *See* Vogel dep. 26: 5-24.

Jan. 13, 1995). However, almost every court has rejected this distinction, relying instead on the purpose underlying the document's creation.

The "original sources" exception covers any documents created by an employee of a hospital who has no responsibility for evaluating the quality of the care and who did not prepare the documents at the request of a professional health care provider evaluating the quality of the care as part of a peer review. *See Atkins v. Pottstown Memorial Med. Ctr.*, 634 A.2d 258 (Pa. Super. 1993). However, where the document would not have been created but for the initiation of peer review, this document should be considered derived from or part of a peer evaluation.

In the present case, the nurses who prepared and reviewed the documents testified that each was generated for the purpose of evaluating the conduct of the medical staff and, if necessary, reeducating the staff regarding future procedures. Each was derived from or part of a peer evaluation or review of staff conduct for the purpose of reeducating the staff. Even if some of the factual information contained within the subject documents is available through original sources, that alone does not render the documents discoverable. *See Dodson v. DeLeo*, 872 A.2d at 1244. Plaintiffs remain free to examine the staff concerning their knowledge of the circumstances surrounding plaintiff's injuries, but they may not inquire as to what conclusions or recommendations resulted from the investigation.

In summary, there is no reason for me to depart from the prior holding and underlying reasoning in *O'Neill, supra.* To the contrary, the case law that has developed following *O'Neill* has given less weight to when the reports were

created and by whom and more weight to the reason or purpose for their creation. Thus, since the documents in question were prepared for purposes of reviewing the quality of the medical services that were provided, these documents are protected by the Peer Review Protection Act.

For these reasons, I enter the following order of court:

### ORDER OF COURT

On this 9 day of September, 2013, it is hereby ordered that plaintiffs' motion to compel discovery is denied.